Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Daniel Garcia. Mr. Garcia is here today challenging the District Court's denial of his motion to suppress. It resulted from a car stop, which was purportedly because of tinted windows and a wide right turn. But after that stop, absolutely no effort was made by the police to investigate the reported reason for the stop. And that was because, as Officer Timlin was walking toward the car, he later said that he saw a bong on the left rear side of the rear passenger seat. He claimed that he knew it was a meth bong because of the residue, white crystalline residue on the bong. And that bong became the basis for the prolongation of the stop and everything that followed. What we contend was an illegal and unjustified frisk, search of Mr. Garcia, a search of his possessions, and a search of his car. So I'm going to focus on that for a minute because it was the basis of everything that followed. Mr. Timlin said that he saw the bong later, and later he said that he saw it on the rear passenger seat. It's the basis of the court's finding that further investigations into searches of Mr. Garcia were justified. The government also cites it as the basis for all that followed. But the police evidence shows that Timlin could not have seen the bong on the left passenger seat. There was a remark before the search by Officer Timlin that Garcia had bongs and stuff in the car. So why doesn't that make the evidence at least inconclusive about whether there was a bong out on the seat? Absolutely, Your Honor. He does say, first of all, he says you have marijuana in the car, and then he said he'd seen bongs and stuff. And first of all, I would point to the fact that he says bongs in the plural and stuff. Secondly, I would point to the fact that Timlin himself said he says things that he doesn't believe to be true in order to elicit responses from the people he's interviewing. It seems to me, didn't the district court find that he did see a bong? Yes, Your Honor. All right, so that's a finding. Yes. Are you challenging that finding? Yes, Your Honor. Is it not supported by the evidence? Well, we're challenging it as clearly erroneous because the evidence that was pointed to in our opening brief is not the evidence upon which the district court relied. The district court relied upon Timlin's body cam, and Timlin's body cam, we acknowledge, doesn't show anything when he's walking towards the car. Later, Timlin conducts a search of the rear passenger seat, and then you can clearly see the rear passenger seat when he's conducting the search. He's got a heavy-duty flashlight. This happened about 7 to 8 o'clock at night, so it was somewhat dusky. He's got a heavy-duty flashlight. What's the basis of your challenge? I mean, it's, you know, it was physically impossible for him to see it? I mean, what's the basis of the challenge to the finding? Well, that it wasn't there, and their own video camera shows that it wasn't there. So we're saying it wasn't visible. I'm sorry, I misspoke. It wasn't visible because when he later conducts a search of the car, he opens the left rear passenger door. He's got a flashlight in his hand. His body cam clearly shows the rear passenger seat. There's no bong there. He moves stuff around. There's no bong there. Ultimately, what he does is he leans over. You hear a clicking noise and another clicking noise, and you see the bong. And I think the only reasonable interpretation, the only possible interpretation, is that there's a center console that's closed. The clicking is the opening of the center console. He pulls the bong out, and then the second clicking is the closing of the center console. So our position is the evidence conclusively shows the bong was in the center console. It was not visible at the time Timlin walked past the car on his way to talk to Mr. Garcia. Has anybody answered your question, Your Honor? Well, I guess so. But the narrative you just gave is sort of your reconstruction of what happened, right? It's what the government's own evidence, the body cam, shows that Timlin walked past the car. Did the body cam show the rear console opening, somebody reaching in and pulling out the bong? It doesn't show that. You know what I mean? So it's an inference. That's correct. But I think it's the only possible inference because he said it was in the rear passenger seat. You can clearly see on the body cam there is no bong in the left rear passenger seat. But the body cam didn't show the left side of the seat, did it? There are two times when that's shown. First of all, at the outset of the search, Timlin is walking towards the car. That's what the court and the government rely on. At that point, the body cam is on his chest. You can't see into the car. We're not relying on that. He pulls Mr. Garcia out of the car, searches him, then he goes back to search the car. He opens the left rear passenger car door. He's got his flashlight. You can see the door clearly. It's on the video that we've submitted. Some stills have been submitted. You can see the left rear passenger seat clearly. There is no bong in there. Timlin spends a while moving things around. You still don't see a bong. It's only after he leans over and you hear the clicking noises, and he's leaning over towards where the center console is that is closed at the time, that ultimately he holds the bong in his hand. And so you're correct. It's an inference, but I think it's the only possible inference because there is no bong on the left rear passenger seat when you see him searching the car. Okay, thank you. Thank you. Okay, so we're arguing that he could not possibly see the bong. He admits that he makes things up and says things to elicit a response, and that's what happened. And the bong was the genesis of everything that followed. Another issue with respect to his identification of having seen a bong was that he claimed he had seen white crystalline residue on it. And let's remember this was at dusk. It was very dark. He couldn't have seen the residue. But more importantly, the bong itself is in evidence, along with pipes that do have the white crystalline residue on it. So we can tell the difference. The bong is immaculate. So we know, again, that Timlin's justification that this was a meth bong as opposed to a marijuana bong because of the white crystalline residue was also unfounded because there was no residue on the bong. So that's the basis of our argument. Everything that followed was based upon that purported sighting. Timlin then pulls Garcia out of the car. He immediately puts his hand behind him and starts to frisk him and orders them around. They take Garcia's possession, and he starts to frisk him. And he's not entitled to do that unless he has reasonable suspicion that Garcia is armed and dangerous. And there was no reasonable suspicion apart from the purported sighting of the bong. Garcia was completely calm. He pulled over when they tried to do the traffic stop. He calmly and coherently answered questions. He didn't resist. He made no furtive movements. He was completely calm and responsive and compliant throughout the search. So apart from Timlin purportedly having seen the bong, there was no justification for conducting a frisk. He was also wearing a tank top and shorts, so there was no possibility of concealing weapon on his person. We also argue that the officers far exceeded the scope of any legitimate Terry frisk because a Terry frisk says that you have to feel an object whose contour or mask makes its identity immediately apparent. The officers did find— Was there a finding made of when the defendant was arrested? I don't think there was, in the opinion, in the district court's decision. Do you make an argument as to what you have as insurance at what point? He was, in fact, under arrest. Well, with respect to the prolongation and the consent, we do argue that under Washington, the fact that he couldn't have felt he was free to go, the first test under Washington, I think, is whether the person is in custody. But the Washington test is not equivalent to the Miranda test for custody or for an arrest custody. The Washington test as to whether consent is voluntary is whether a person would have felt free to leave. And so we do argue at some point down the road, Garcia gave consent to the search of the car when they asked him, do you mind if we check? And we're arguing that that consent was not voluntary. And one of the tests for voluntariness of consent for a search of the car is whether the person was in custody. And Washington tells us that custody in this context means the person did not feel they were free to leave. And here, Garcia was handcuffed. He had his hands behind his back. He was told to sit on the ground with his legs crossed. He obviously, you know, he was taken away from his car. So he obviously, under the Washington test, was in custody. And that's the strongest test or the most important test in terms of whether consent is voluntary. So we would argue under the Washington factors, his consent was not voluntary. Because in Washington, there were two factors that supported the court's finding that consent was not voluntary. And here I think we have more than two factors, that it was simply he did not give voluntary consent and it was also tainted by the prior police misconduct. At that point, the options had exerted their authority over Garcia to the point that he would not feel he had any choice but to comply. And I would like to reserve some time for rebuttal if the court has no more questions. I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Good morning. May it please the court. Jenna McCabe on behalf of the United States. There are three independent reasons early in the stop, within the first two minutes, that the officers have probable cause to conduct all the searches in this case. And I'll start with the first one, which is that Officer Timlin saw the methamphetamine bong in the backseat. He saw this bong, as the district court did not clearly err in so finding, and that gave them probable cause to search the car, to search the defendant's person, and to search his belongings, as well as to arrest him. What do you say to the arguments of your adversary that your own evidence shows that this was a lie? Because there was, in fact, no bong on the backseat. It was in a compartment that was extracted later after he had already started the search. Your Honor, as the district court reviewed all of that evidence, looked at the body cams, read the declarations from the officers, reviewed the police reports in this case, evaluated counsel's arguments, as well as looked at the defendant's declaration, the district court did not clearly err in finding that the gaps in the body cams. Now, if it was a pure credibility question, I would understand that argument, but we're in just as good a position as the district court to show, to look at what the body cam showed or did not show. And so, yes, the standard is very deferential, but it's not zero. That's correct, Your Honor. This court can look at the same record that the district court did, but still should give deference to the district court's factual findings. But this court, when reviewing that evidence, should make the same finding that the district court. But do you agree with Ms. Young's, I guess, view that the body cam shows that there was no bong on the backseat? No, I do not agree with counsel's argument about that. Why not? Well, if you look at the body cam at that portion where the officer, we agree that you cannot see it when the traffic stop is initiated, but if you look at the body cam when Officer Timlin is searching the backseat, the body cam is positioned below his chest, and he's moving about as he's looking at things in the car. The backseat has some items on it, and you see the body cam move up and down as he's moving around it, but it is never at eye level, and you cannot see the whole backseat. And the officer then grabs the bong. You can see it at that point, but the district court was correct in relying on the officer's statement at the outset of the stop about you have bongs and stuff. And also, Officer Timlin later on told the officers who arrived at the scene that he had seen what he referred to as a pipe at that point, but he had seen that in the backseat when he first approached. And so for those reasons... They cross-examined about, well, the body cam doesn't show a bong. Was that part of cross-examination at the hearing before the district judge? No, Your Honor. The district judge denied an evidentiary hearing in this case, so the record was just based on the declarations from the officers and everything else that has been submitted. But the district court was correct in holding that the gaps in the body cam were filled in by the officers' declaration, and the defendant didn't present any contrary evidence. Yes, counsel made arguments about what other inferences the district court could have made, but on review of this for clear error, the district court looked at permissible views of this evidence, picked one, and this court should affirm... If there was no evidentiary hearing, then the district court is making, in effect, a credibility finding without the opportunity of the defense ever to impeach that credibility. That's correct, Your Honor. The district court, multiple times in its order, said that the district court found Officer Timlin's declaration to be credible and made that... So why should we give any deference to that? The credibility isn't just a question of a piece of paper, an assertion in a piece of paper. It's in credibility by its very nature under an adversary system, determined only after both sides have had a chance to question the witness. I would disagree that the district court still couldn't make the credibility determination comparing the other evidence in this case to the declarations that the officers submitted. There was internal consistencies between all of that evidence, and so my position would be that the district court was entitled to make that credibility finding, but even this court, looking at all the information that was before the district court, should reach the same conclusion that this officer mentioned the bong when he approached, mentioned the bong to officers who showed up later, the defendant denied having marijuana in his car. There are a number of reasons that Officer Timlin's statement made sense, was credible. The defendant did not present a declaration saying that the bong wasn't there or could not have been visible, presented no evidence saying that the bong was somewhat hidden or out of view of Officer Timlin. What else? What does the body cam show as to what else was on the back seat? I apologize, Your Honor. I said what items were on the back seat. There was a bag on the back seat. When Officer Timlin is first looking in closest to him, there is a bag there. What bag? About a messenger bag size. Okay. And you can tell when you watch the video that Officer Timlin's body camera angle is quite low and he has to reach over into the car to move things around. There's another bag and there are journals in the back seat, and then there are a number of items on the floor as well. And when watching that portion of the body camera... What else is on the seat? There's also what looks to be a cup holder or something pulled down on the back seat. So the view is still obstructed from the perspective of the body camera, but Officer Timlin's eyes were much higher when he was looking down into the car through the partially rolled down window. But additionally, there were other independent reasons that the searches in this case were proper. Within the first two minutes of the stop, the defendant does not dispute that he consented to the search of his belongings. And when Officer Martinez did search his belongings, Officer Martinez found a folded up tin foil with cocaine in it, and that would have given officers probable cause to search the defendant in his car and to arrest him for the possession of the cocaine. And there's a third reason, which still is within that first two minutes of the stop, which is the district court's finding that the defendant nodded his head to consent to Officer Timlin searching his person. Did the district court give any reason why he denied the evidentiary hearing? Yes, Your Honor. He denied the evidentiary hearing because the defendant had not presented contradictory evidence. And so the district court, in its view, believed that from the body camera footage, the corroboration of the officer's reports from that time and the officer's declaration, that the district court did not need to hold an evidentiary hearing. The defense's position was that the defendant should be able to cross-examine the officers on some impeachment matters. Those matters were before the district court. The district court had reviewed some disclosures prior to the hearing and briefing outside of this suppression motion. And also, the defense raised some of the text messages that it's now raising on appeal that they should have been able to cross the officers on. And the district court still felt that the defendant's, and as this circuit has held, a defendant's desire to cross-examine officers before trial is not enough to have an evidentiary hearing for a suppression motion. The defendant needs to put forth genuine disputes of fact that the district court would need to resolve. And the district court did not find any factual disputes because of the body camera and all the other evidence of the court. I'm not following that. If the body camera did not show the bomb when it showed the back of the seat, but only showed the bomb thereafter when there was indication it had been taken from a compartment, why wasn't that enough to at least warrant an evidentiary hearing? It wasn't enough because Officer Timlin's contemporaneous statement at the outset of the stop about there being bombs and stuff in the back seat of the car where he had just looked was corroborative of what he was saying in his declaration, which the defense had not presented contradictory evidence. That seems at best to just make everything inconclusive. You have Timlin saying, you know, you've got bombs and stuff, but then you have body camera footage which doesn't show a bomb. You hear a clicking noise, and then there's a bomb in his hand being placed down on the seat. I don't understand how the video corroborates what he was saying. It seems to make it just inconclusive about whether the bomb was there or not. I agree that there is a separate inference you can make, which Defense Counsel is raising, about there not being a bomb that Officer Timlin could see, but the district court was the fact finder in this case and found that the other inference, which is that Officer Timlin did see a bomb, was the fact in this case. And beyond just Officer Timlin's initial statement at the outset, later on in the traffic stop when other officers arrived on the scene, he told them that he had seen what he referred to as a pipe in the backseat right at the outset of the stop. And the district court found that those statements corroborated what he was saying in addition to the fact that there was a bomb found in the backseat. And so this wasn't a situation where the officer was just making something up and didn't find anything. It was found in the backseat where Officer Timlin said that he had found it. And you can see it on the body cam when Officer Timlin moves it, but because of the position of the body cam, you just can't see it from his own eye level, which doesn't mean that it wasn't there. And so the district court resolved that argument from Defense Counsel in favor of finding the fact that Officer Timlin did see it, and that gave the officers probable cause. But the district court, as mentioned, had a number of other reasons that the officers had probable cause in this case to conduct the other searches. At what point, in your view, was the defendant taken into custody? That's a difficult question because the officers didn't formally say the words, I will say that the points of the consent for the consent of the search of his person and the consent of the search of his belongings, without doubt, he was not in custody at that time. That's what the district court found. The factors that this court employs, that all makes sense that he was not in custody. The trickier question is whether he was in custody at the time that he consented to the search of his car, because at that point he had been handcuffed, but he still, in our view, was not in custody because the precedent the district court was relying on, and what's been the law for a long time, is that handcuffing alone doesn't put the person into custody. In the context of the Bazignani case, it talks about how it's whether a person would feel free to leave after brief questioning, and the handcuffing portion of that makes it a more difficult question, but I still think that the defendant wasn't in custody until the point that he was removed to the patrol vehicle and put in the backseat of that car. Any statements that he made after he was in custody, before he was Mirandized, would have to be suppressed, yes? Yes, I agree with you. The issue is that he did not make, that he didn't have the consent things, and he didn't make the statement about having the methamphetamine pipe in his pocket while he was in custody, and so the statements that the defense was trying to suppress pre-Miranda, the only one that's inculpatory is the one saying, I have a methamphetamine pipe in my pocket, and for that one, we have argued in our answering brief that it would be harmless error because that statement didn't result in his conditional plea in this case. Okay. And unless the court has any questions for me, which I'm happy to answer. Thank you very much. We'd ask you to affirm. Thank you. Thank you. So I wanted to address some of the things that the prosecutor argued. First of all, she said that there were three independent reasons, and one was that Timlyn saw the bomb. And she said that the cam was positioned in a way that the whole rear interior of the back seat of the car was not visible. So I asked the court to look at the excerpts of record. The video itself is clearer, but the excerpts also show, and especially from ER 314 to ER 317, are the excerpts or the stills of that video, and it's very clear. You can see the entire rear left seat. It's very clear there's no bomb there. And you can see the closed console that we're saying he leaned over and pulled the bomb out of. And the prosecutor also referred to the fact that later, when Timlyn was being asked to justify the search, he kept on saying he saw a pipe. That's very different from a bomb, and that supports our argument, I think, that he didn't realize at the time that the bomb was going to become so critically important in justifying everything that occurred. Because he said he saw a pipe. And if you look at the evidence collected, a pipe is extremely different from a bomb. Also, the fact that- Mr. Mendenhowe, you're referring to the pipe that was on his person. Yes. Later he said that that was the justification, that he saw a pipe in the car rather than a bomb in the car when he was talking to officers attempting to justify the search. There's also evidence in the record that the bomb was not adequately, and it was inconsistently documented, showing that they didn't appreciate its importance at the time. And also evidence that we tried to get in, or the defense tried to get in, that the officer, Timlyn, had violated the officer's conduct policy in another case. And with respect to the evidence you're hearing, those are particular evidence of importance that would have tended to show that Timlyn's credibility could have been challenged and that his statement that he saw a bomb, the statement that he saw bombs and stuff, he could have been asked multiple things that defense counsel at the hearing asked, told the district court he needed to be questioned about. He needed to be questioned about whether or not he often sees bombs, and therefore it was common for him to say, I saw bombs, because he often sees them with drugs, so that it wouldn't be an uncommon thing for him to mention. I'm a little unclear what you're asking from this court. Are you asking that we send it back for an evidence you're hearing, or are you saying that no reasonable person could possibly conclude that he was telling the truth when he said he saw the bomb, and therefore we have to revert? Well, the latter is what I'm saying. I think if you look at the video, there's no way, the bomb is absolutely not on the left rear passenger seat, and the fact that he has to lean over and you hear these clicking noises, and there's a console there that's closed, I think the only inference to be drawn from that is that the bomb is in the console, and it's a glass piece of equipment, so you would expect it to be in a console rather than laying on a seat where someone could sit on it and hurt themselves. The only reasonable inference to be drawn is that it's in there, it's enclosed, he couldn't have seen it, and therefore it should be reversed. But alternatively, we're also arguing that there should have been an evidence you're hearing so that Timlin's credibility could have been inquired into. And the prosecutor also referred to the fact that Mr. Garcia nodded his head to consent to the search, and that's another area of dispute that we have in that the court relied, there are two video of that incident. One is Timlin who's standing beside Mr. Garcia, the other is Officer Martinez. From Timlin, the court relied on Timlin's video, and then you can't see if he nods, but in fact Officer Martinez' video shows that he didn't nod in response to Timlin's question whether he gave consent to search. And so we do believe that there's no basis for anything that happened in this extreme prolongation of the search, and we would ask the court to reverse. Are there any further questions? Yes. How many minutes was it from the time Mr. Garcia was stopped to the time he was arrested? Do you know? I think from the time he was stopped to the time he was in the police car it might have been about 20 minutes. Actually, I'm not sure about that. I think it was fairly lengthy. Thank you. Thank you. All right, we thank you both for your arguments. This case is submitted.
judges: TASHIMA, THOMAS, Rakoff